IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-00671-STV

JEFFREY W. HOCKENSMITH, as personal representative of the
ESTATE OF JACQUELINE MARIE BICKFORD,

    Plaintiff,

v.

SHERIFF JOHN MINOR, in his individual and official capacity; *et al.*,

    Defendants.
_____

**RESPONSE TO DEFENDANT DANIELLE WOOD'S MOTION TO DISMISS [DOC. 14]**
_____

Plaintiff, through his counsel David A. Lane, Darold W. Killmer, and Reid Allison of KILLMER, LANE & NEWMAN, LLP, submits this Response to Defendant Danielle Wood's Motion to Dismiss [Doc. 14].

## I. Introduction

Jacqueline Bickford, a 31-year-old mother of an infant child, was arrested and taken to the Summit County Jail on April 6, 2016. Ms. Bickford had a Blood Alcohol Content ("BAC") of .351 and told jail staff that "[i]f you take my kid away, I will kill myself." Defendant Wood was a mental health worker with Mind Springs Health, contracted to provide mental health care at the jail, and she determined that Ms. Bickford was clear for general population. Just over two weeks earlier, Defendant Wood had evaluated Ms. Bickford and signed off on a mental health hold for her after determining that she was suicidal. On April 11, 2016, after Ms. Bickford had told jail staff of her suicidal ideations, had not received her prescription anti-depressant medication during her time at the jail despite numerous requests, and had suffered days of untreated alcohol withdrawal, she hung herself.

## II. Factual Background

Ms. Bickford was arrested on April 6, 2016, after being found semi-conscious with her infant son nearby. [Doc. 1], *Complaint*, ¶ 12. She had a BAC of .351. *Id.* ¶ 14. When she was booked into the Summit County Jail, she told jail staff "[i]f you take my kid away, I will kill myself." *Id.* ¶ 15.

Defendant Wood was a mental health worker with Mind Springs Health, contracted to provide mental health services at the Summit County Jail. *Id.* ¶ 10. At the Summit County Jail on April 6, Defendant Wood examined Ms. Bickford and filled out a mental health form, clearing Ms. Bickford for general population in the jail. *Id.* ¶ 15. In doing so, Defendant Wood noted that a mental health organization needed to be contacted before Ms. Bickford was released to the public. *Id.* Just over two weeks earlier, Defendant Wood had signed off on a mental health hold of Ms. Bickford, after determining that she was suicidal. *Id.*

On April 11, 2016, after spending five days suffering untreated alcohol withdrawal and not receiving her prescription anti-depressant medication, Ms. Bickford hung herself in her cell at the Summit County Jail. *Id.* ¶¶ 17-23.

## III. Standard of Review

The Federal Rules of Civil Procedure allow a defendant to file a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "There is a strong presumption *against* the dismissal of claims under this rule." *Blevins v. Reid*, 2008 U.S. Dist. LEXIS 46168, at *9 (D. Colo. June 12, 2008) (citing *Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999)) (emphasis added). When a defendant files a Rule 12(b)(6) motion to dismiss, a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v.*

*Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citation omitted). Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausible" does not mean "likely to be true," but is, instead, a nudge beyond "conceivable." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*; *see also Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

## IV. <u>Argument</u>

Plaintiff's Complaint adequately pleads that Defendant Wood engaged in state action by providing medical examination and care to Ms. Bickford at the Summit County Jail.

### A. **Plaintiff has adequately pled that Defendant Wood engaged in state action by providing medical care at the Summit County Jail.**

"To state a claim under [42 U.S.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). It is well established that private parties like Defendant Wood can be deemed state actors subject to constitutional liability under § 1983. *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) (private corporation); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) (private restaurant); *see also McGill v. Battenhouse, et al.*, 13-cv-1080-RBJ-BNB (D. Colo.) (private nurse who worked for CHC at Jefferson County Detention Facility and CHC itself both subject to liability under § 1983). The United States Supreme Court employs a "flexible approach to the state action doctrine," under which the Court has "appl[ied] a variety of tests to the facts of each case." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir.

1995). Four tests are used to determine whether private parties are state actors under § 1983: the (1) public function test, (2) nexus test, (3) symbiotic relationship test, and (4) joint action test. *Id.* The Complaint adequately pleads that Defendant Wood acted under color of state law by performing a public function.

"If the state delegates to a private party a function traditionally exclusively reserved to the State, then the private party is necessarily a state actor." *Gallagher*, 49 F.3d at 1456 (internal citations omitted). The United States Supreme Court has found a number of functions to satisfy the test, including administering elections of public officials, *Terry v. Adams*, 345 U.S. 461, 468-70 (1953); the operation of a company-owned town, *Marsh v. Alabama*, 326 U.S. 501, 505-09 (1946); and the management of a city park, *Evans v. Newton*, 382 U.S. 296, 298-302 (1966).

The Supreme Court has long made clear that the provision of medical care to prisoners is a duty exclusively reserved to and required of the State. *West*, 487 U.S. at 56. In *West v. Atkins*, the Supreme Court confronted the question of "whether a physician who is under contract with the State to provide medical services to inmates at a state-prison hospital on a part-time basis acts 'under color of state law'" for purposes of § 1983. *Id.* at 43. The Court reasoned that an inmate must rely on prison officials to treat his or her medical needs and that the State, thus, has a Constitutional duty "to provide adequate medical care to those whom it has incarcerated." *Id.* at 55 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Court then held that this duty could not be relieved by contracting with private parties; instead, the State always bears an affirmative obligation to provide medical care to inmates but a private medical provider may "voluntarily assume[] that obligation by contract," becoming a state actor for medical care provided under that contract. *Id.* at 56.

Ultimately, the Court concluded that the physician contracted to provide medical care to inmates was acting under color of state law while treating an inmate. *West* 487 U.S. at 54. In reaching this conclusion, the Court stressed that the physician's general status as a private employee, who practiced medicine outside of the jail, did not change the fact that he was a state actor when he treated the plaintiff inmate. *Id.* at 56-57. The Court made clear that the relevant question is the medical provider's "function while working for the State, not the amount of time he spends in performance of those duties or the fact that he may be employed by others to perform similar duties, that determines whether he is acting under color of state law." *Id.*

Like the doctor who engaged in state action in *West*, Defendant Wood was contracted with the state and worked at the jail "fully vested with state authority to fulfill essential aspects of the duty, placed on the State by the Eighth Amendment and state law, to provide essential medical care to those the State had incarcerated." *Id.* at 56-57. As the Tenth Circuit has noted, interpreting *West*, a fundamental component of the state actor analysis is that "prisoners d[o] not have a choice of doctors and therefore [can] not look elsewhere for their medical care." *Nieto v. Kapoor*, 268 F.3d 1208, 1216 (10th Cir. 2001). Here, Ms. Bickford had no opportunity to pursue outside mental health care—Defendant Wood, providing medical care at the jail, was her only hope at the time Defendant Wood cleared her for general population. Though she was a mental health worker, Defendant Wood was contracted to provide medical care in the Summit County Jail, as the Tenth Circuit has long made clear that the State's duty to provide "medical care" to prisoners includes the duty to treat the inmate's mental health. *See, e.g., Ramos v. Lamm*, 639 F.2d 559, 574-75 (10th Cir. 1980). In sum, regardless of her status as a private employee of Mind Springs, Defendant Wood performed the traditional state function of providing medical care to

Ms. Bickford at the Summit County Jail. *Complaint*, ¶¶ 10, 15. Plaintiff has adequately pled that she is therefore subject to constitutional liability. *See West*, 487 U.S. at 56.

Defendant Wood's reliance on *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) is entirely misguided. *See* [Doc. 14], Motion to Dismiss ("*MTD*") at 5. *Wolotsky* was an employment case in which the plaintiff was a mental health worker who had been fired by a private, non-profit mental health facility that had some contracts and entanglements with the state. *Wolotsky*, 960 F.2d at 1333. The case did not involve the provision of medical care at a state correctional facility, and therefore, the Court's statement that "providing mental health services has not been a power which has traditionally been exclusively reserved to the state," *id.* at 1335, applies to the provision of mental health care by a private organization to an individual who is not detained or incarcerated and has no applicability to Defendant Wood's actions. Similarly, Defendant Wood's citation to *Gabbard v. First Tenn. Bank*, 2007 WL 2263082, *2 (E.D. Tenn. 2007), is inapposite because that case involved medical treatment provided at a hospital to a person who was not detained or incarcerated. *Id.* at *2-8. Ultimately, Defendant Wood's assertion that "[p]roviding mental health services is not such a power that is traditionally and exclusively reserved to the state," fails to grapple with the facts alleged against her. Plaintiff has not alleged that Defendant Wood engaged in state action simply because she provided mental health services—rather, she was a state actor by providing mental health services to a person detained in a county jail. Such jail medical care has long been established as a traditional state function, reserved exclusively to the state. *West*, 487 U.S. at 56.

Finally, the "fact-intensive nature of the state action inquiry," *Johnson*, 293 F.3d at 1206 (internal citation omitted), renders it a particularly unsuitable basis for dismissal under Rule 12(b)(6). *See, e.g.*, *Brill v. Correct Care Sols.*, 286 F. Supp. 3d 1210, 1217 (D. Colo. 2018)

(denying a motion to dismiss due to the fact-intensive nature of the state action inquiry). As the Supreme Court has cautioned, "[w]hat is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295-96 (2001).

Nonetheless, even without the benefit of discovery in this case, Plaintiff has sufficiently alleged state action, as explained above. Defendant Wood's reliance on *Wolotsky* is also unavailing, in addition to the reasons explained above, because that case resolved the state action inquiry on summary judgment, after the close of discovery. *See Wolotsky*, 960 F.2d at 1334-35. Indeed, the fact that *Wolotsky* progressed to summary judgment undercuts Defendant Wood's contention that Plaintiff's claims should be dismissed while the case is in its infancy. *See Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.") (internal quotation marks omitted).

Because Plaintiff has adequately pled that Defendant Wood engaged in state action by providing medical care at the Summit County Jail, the claim against her should not be dismissed at this stage of litigation, before any discovery has occurred.

## V. Conclusion

For the reasons stated above, Defendant Wood's Motion to Dismiss Plaintiff's Complaint should be denied.

Dated this 7th day of June 2018.

KILLMER, LANE & NEWMAN, LLP


*s/ David A. Lane*
David A. Lane
Reid Allison
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 Facsimile
dlane@kln-law.com
rallison@kln-law.com

*Counsel for Plaintiff*