**Crocker v. Glanz, --- Fed.Appx. ---- (2018)**
2018 WL 4566260

2018 WL 4566260
Only the Westlaw citation is currently available.
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of App. 10th Cir. Rule 32.1.
United States Court of Appeals, Tenth Circuit.

Kendra CROCKER, as Co-Guardian of Eric Grant;
Allen Mora, as Co-Guardian of Eric Grant,
Plaintiffs-Appellees,
v.
Stanley GLANZ, in his personal capacity,
Defendant-Appellant,
and
Vic Regalado, in his official capacity; Tulsa County Board of County Commissioners; Armor Correctional Health Services, Inc., Defendants.

No. 18-5038
|
Filed September 24, 2018

(D.C. No. 4:17-CV-00149-TCK-FHM) (N.D. Oklahoma.)

**Attorneys and Law Firms**

Robert M. Blakemore, Daniel E. Smolen, Donald E. Smolen, II, Smolen Smolen & Roytman, Tulsa, OK, for Plaintiffs-Appellees

Galen Brittingham, Walter Dewey Haskins, Esq., Kirsten Louise Palfreyman, Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, Tulsa, OK, for Defendant-Appellant

Walter Dewey Haskins, Esq., Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, Tulsa, OK, for Defendants Vic Regalado, Tulsa County Board of County Commissioners

Sean Patrick Snider, Austin Joseph Young, I, Johnson Hanan & Vosler, Oklahoma City, OK, for Defendant Armor Correctional Health Services, Inc.

Before HARTZ, BALDOCK, and HOLMES, Circuit Judges.

**ORDER AND JUDGMENT**[*]

Harris L Hartz, Circuit Judge

**\*1** Eric Grant was assaulted and raped by another inmate while in custody at the Tulsa County Jail. Grant's co-guardians filed suit on his behalf against Sheriff Stanley Glanz under 42 U.S.C. § 1983, asserting supervisory liability. Glanz has filed this interlocutory appeal from the district court's order denying his Fed. R. Civ. P. 12(b)(6) motion to dismiss on the ground of qualified immunity.[1] We have jurisdiction under 28 U.S.C. § 1291 to review questions of law concerning the denial of qualified immunity, *see Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and reverse the denial.

**I. BACKGROUND**

**A. Grant's Complaint**
Grant's complaint alleges the following: He was arrested "on a non-violent misdemeanor charge of trespassing." Aplt. App. at 4. "When Mr. Grant was booked ... [he] was suffering from obvious, known, and serious mental health disorders, including schizophrenia." *Id*. But "[d]espite the fact that Mr. Grant was in an obviously vulnerable state, personnel at the jail failed to take any of the necessary precautions to protect Mr. Grant before putting him into a dangerous correctional setting." *Id*.

Grant "should have received an immediate evaluation from a mental health specialist, or, at the very least, an immediate referral for a mental health evaluation." *Id*. Instead, he "was cleared by" the Tulsa County Sheriff's Office and Armor Correctional Health Services, Inc.'s "booking staff, to enter the Jail," and "was placed in general population." *Id*.

Grant's cellmate was "a registered sex offender," who "[a]lmost immediately" began to "harass[ ] and threaten[ ]" him. *Id*. at 5. Grant complained to "jail personnel about the threats, some of which were of a sexual nature," and "he asked to be transferred to another cell." *Id*. Also, one

**EXHIBIT A**

**Crocker v. Glanz, --- Fed.Appx. ---- (2018)**
2018 WL 4566260

of his co-guardians "called the jail and informed the Tulsa County Sheriff's Office of the danger Mr. Grant was in and the need to move him to another cell." *Id*. In the meantime, Grant's mental health continued to decline, yet "[t]he medical staff at the jail failed to give [him] any of his needed medication." *Id*.

About two weeks after Grant and his cellmate had been housed together, the cellmate "pulled Mr. Grant from his bunk and began to brutally assault him. During this assault, Mr. Grant was knocked unconscious and brutally raped." *Id*. The assault resulted from "longstanding, systemic deficiencies in the medical and mental health care provided to inmates at the Tulsa County Jail. Sheriff Glanz has long known of these systemic deficiencies and the substantial risks to inmates like Mr. Grant, but [has] failed to take reasonable steps to alleviate those deficiencies and risks." *Id*. at 6.

### B. The Motion to Dismiss

**\*2** Glanz moved to dismiss the complaint under Rule 12(b)(6) based on qualified immunity. The district court recognized that to survive the motion to dismiss, Grant's complaint "must allege facts sufficient to show (assuming they are true) that [Glanz] plausibly violated [his] constitutional rights, and that those rights were clearly established at the time." *Id*. at 86 (internal quotation marks omitted). The court determined, however, that Glanz had failed to "argue that the alleged violation of Grant's constitutional rights was not clearly established," and therefore "focuse[d] [its analysis] only on the first element of qualified immunity: whether the alleged facts show that Glanz plausibly violated Grant's Fourteenth Amendment rights." *Id*. at 86-87. It identified the constitutional right at issue as Grant's Fourteenth Amendment due-process guarantee that pretrial detainees will be protected from deliberate indifference to their medical needs. *See Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (Eighth Amendment's proscription against deliberate indifference to the serious medical needs of a prisoner applies to pretrial detainees under the Fourteenth Amendment). It then ruled that the complaint was adequate.

### II. STANDARD OF REVIEW

"We review the district court's denial of a motion to dismiss based on qualified immunity de novo." *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) (internal quotation marks omitted). "In reviewing a motion to dismiss, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the non-moving party." *Id*. (ellipses and internal quotation marks omitted). To survive a motion to dismiss, the well-pleaded factual allegations in Grant's complaint "must nudge [his] claims across the line from conceivable to plausible." *Id*. at 1163 (brackets and internal quotation marks omitted).

### III. ANALYSIS

#### A. Qualified Immunity

"We employ a two-part test to analyze a qualified immunity defense. In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right as issue was clearly established at the time of defendant's alleged misconduct." *Id*. at 1164 (internal quotation marks omitted). Because we hold that the complaint inadequately alleges a constitutional violation by Glanz, we need not address the clearly-established requirement.

#### B. Supervisory Liability

Grant's individual-capacity claim against Glanz is predicated on a theory of supervisory liability. "[I]n a § 1983 lawsuit, supervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (brackets, ellipses, and internal quotation marks omitted). But because § 1983 does not authorize liability under a theory of respondeat superior, "[a] plaintiff arguing for the imposition of supervisory liability ... must show an affirmative link between the supervisor and the constitutional violation." *Id*. (internal quotation marks omitted). "The ... affirmative link between a supervisor and the alleged constitutional injury has ... three related prongs: (1) personal

**EXHIBIT A**

involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Id*. (internal quotation marks omitted). The first prong is not contested by Glanz, so we address only the second and third.

As for causation, the district court ruled that "the [c]omplaint alleges facts that suggest Grant may have been particularly vulnerable to assault and/or sexual assault, and therefore plausibly establish causation." *Id*. at 88. To support this ruling, the court cited a report from a government commission on prison rape and a law-review article. But neither the report nor the law-review article is referenced in the complaint. And the court (and Grant) have provided no authority for considering these documents to resolve a motion to dismiss for failure to state a claim. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (noting limited exceptions to rule restricting review to four corners of complaint). In particular, we see no basis for taking judicial notice of the documents. *See* Fed. R. Evid. 201.

**\*3** But even if Grant's complaint sufficiently alleged an affirmative link between Glanz's failure to conduct a proper mental-health evaluation and the assault and rape, the claim still fails because Grant failed to show that Glanz acted with deliberate indifference to his serious medical needs. *See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) ("[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." (internal quotation marks omitted) ). A deliberate indifference claim is "comprised of an objective and subjective component." *Id*.

"Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Id*. (internal quotation marks omitted). And "under the subjective inquiry, the prison official must have a sufficiently culpable state of mind." *Id*. at 1230-31 (internal quotation marks omitted).

> In describing the subjective component, the [Supreme] Court made clear a prison official cannot be liable unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 1231 (internal quotation marks omitted).

We need not address the objective component because Grant's allegations as to the subjective component fail the plausibility test. *See Martinez v. Beggs*, 563 F.3d 1082, 1089-91 (10th Cir. 2009) (even though the objective component was satisfied, subjective component was not; thus plaintiff failed to demonstrate deliberate indifference). The district court said that Grant's complaint "supports a plausible inference that Glanz was aware of systemic deficiencies in medical care prior to the assault on Grant," and he therefore "exhibited deliberate indifference to inmates' medical needs." Aplt. App. at 88. To support this finding, the court noted allegations in the complaint of several audits that reported to Glanz the presence of "widespread problems with physical and mental health care provided to inmates, including the failure to perform mental health screenings and ... a prevailing attitude of indifference among the medical staff of the Jail." *Id*. at 88-89. What is missing from these allegations, however, is any evidence that Glanz was informed that the shortcomings relating to mental health posed a danger to mentally ill inmates of being assaulted by other inmates. "[T]he subjective component requires the prison official to disregard the risk of harm claimed by the prisoner." *Martinez*, 563 F.3d at 1089. For example, a jail may have a defective policy regarding admission of intoxicated persons; but it would not be liable with respect to a suicide by such a person unless it was shown that jail personnel "were deliberately indifferent to the *specific risk* of suicide, and not merely to the risk of intoxication." *Id*. Thus, in the case before the court in *Martinez*, where the prisoner had suffered a heart attack and died as a result of intoxication while in detention, "the defendants must subjectively disregard the risk of [the victim's] claimed harm – death and heart attack – and not merely the risks of intoxication." *Id*. at 1089–90. Here, the allegations may suffice to show that Glanz was well aware that mental-health services at the jail were wholly inadequate. And Grant might therefore have a deliberate-indifference claim if his mental illness had caused him to harm himself. But the "specific risk" in this case was the risk of attack by other inmates, and there are no allegations in the complaint that Glanz knew of that risk.

**\*4** Finally, Grant argues for the first time on appeal that the Supreme Court's decision in *Kingsley v. Hendrickson,* ––– U.S. ––––, 135 S. Ct. 2466, 2473, 192 L.Ed.2d 416 (2015), eliminated the subjective component of the deliberate-indifference requirement for Fourteenth Amendment claims by pretrial detainees. We decline to review this argument because Grant did not raise it in district court. We exercise our discretion to review issues not raised below "only in the most unusual circumstances[

**EXHIBIT A**

**Crocker v. Glanz, --- Fed.Appx. ---- (2018)**
2018 WL 4566260

] ... [and] where the argument involves a pure matter of law and the proper resolution of the issue is certain." *United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir. 2007) (internal quotation marks omitted). Here, there are two reasons for uncertainty about whether Grant could obtain relief under *Kingsley*. First, the claim in that case was an excessive-force claim where there was no question about the intentional use of force against the prisoner. The analysis in *Kingsley* may not apply to a failure to provide adequate medical care or screening, where there is no such intentional action. Indeed, the Court reiterated the proposition that "liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." 135 S.Ct. at 2472 (internal quotation marks omitted). Second, even if we ultimately decided that *Kingsley* changed the law in the way proposed by Grant, his theory (which is, at the least, an expansion of *Kingsley*) would not afford him relief because it was not clearly established law at the time of the events in question. Although it may be that Glanz did not adequately preserve the clearly-established argument in district court, Grant undeniably did not preserve the *Kingsley* argument. We would be loath to excuse Grant's forfeiture but not Glanz's. Therefore, we will not address the *Kingsley* issue.

### IV. CONCLUSION

We reverse the district court's denial of Glanz's motion to dismiss on the grounds of qualified immunity and remand to the district court for further proceedings consistent with this order and judgment.

HOLMES, Circuit Judge, concurring.

I concur in the judgment and join in the lion's share of the analysis of the majority's well-written and thoughtful order and judgment. I decline, however, to join the majority's recitation of two ostensible reasons "for uncertainty" about whether Mr. Grant may secure relief under the Supreme Court's decision in *Kingsley v. Hendrickson*, --- U.S. ----, 135 S. Ct. 2466, 192 L.Ed.2d 416 (2015). As the majority correctly observes, Mr. Grant presents his *Kingsley*-based argument for the first time on appeal and that argument is therefore forfeited. At least under the unremarkable circumstances here, the appropriate course is for us to decline to consider that argument on the merits and go no further. *See, e.g., Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1261 (10th Cir. 2018). Instead, the majority offers observations regarding the reasons "for uncertainty" concerning whether Mr. Grant could prevail on his *Kingsley*-based argument. Such observations are purely dicta. I respectfully decline to join my esteemed colleagues in this unnecessary analysis. For these reasons, I write separately.

**All Citations**

--- Fed.Appx. ----, 2018 WL 4566260

### Footnotes

\*   After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1   Grant's co-guardians also brought § 1983 claims against (1) Vic Regalado, the current Sheriff of Tulsa County, in his official capacity, (2) the Tulsa County Board of County Commissioners (the Board), and (3) Armor Correctional Health Services, Inc. (Armor). The district court granted the Board's and Armor's motions to dismiss the § 1983 claims but denied Regalado's and Glanz's motion to dismiss the § 1983 claims. Only Glanz appeals.

**EXHIBIT A**