# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00671-STV

JEFFREY W. HOCKENSMITH, as personal representative of the
ESTATE OF JACQUELINE MARIE BICKFORD,

     Plaintiff,

v.

JOHN MINOR,
CHERYL GIORDANO,
GILBERT,
DANIELLE WOOD, and
DEPUTIES JOHN AND JANE DOES 1-10,

     Defendants.

_____

## ORDER
_____

Magistrate Judge Scott T. Varholak

     This matter comes before the Court on Defendant Danielle Wood's Motion to Dismiss [#14] (the "Wood Motion") and Defendant Sheriff John Minor's Motion for Judgment on the Pleadings [#32] (the "Minor Motion"). The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [#25, 26] This Court has carefully considered the motions and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the motions. For the following reasons, **IT IS ORDERED** that the Wood Motion is **DENIED** and the Minor Motion is **GRANTED**.

## I. BACKGROUND[1]

### A. Ms. Bickford's Suicide

This lawsuit arises out of the April 11, 2016 suicide of Jacqueline Marie Bickford while she was a pretrial detainee at the Summit County Jail. [#1 at 1-2] On April 6, 2016, Ms. Bickford was arrested when Summit County Deputy Sheriff Eric Sipes found Ms. Bickford semi-conscious in her apartment with her infant son nearby. [*Id.* at ¶ 12] Deputy Sipes concluded that Ms. Bickford was severely intoxicated and thus charged her with child abuse/neglect under Colorado law. [*Id.* at ¶ 13] Upon her arrest, Ms. Bickford was taken to the Summit County Medical Center, where her blood alcohol content registered 0.351. [*Id.* at ¶ 14] Ms. Bickford was subsequently taken to the Summit County Jail and held on a bond of $1,000. [*Id.*]

During the booking process at the Summit County Jail on April 6, 2016, at 6:40 p.m., Ms. Bickford told medical staff, "If you take my kid away, I will kill myself." [*Id.* at ¶ 15] Despite this statement, Defendant Danielle Wood, a mental health worker contracted to provide mental health services at the Summit County Jail, noted on a mental health form that Ms. Bickford "does not meet criteria for an M1 hold currently." [*Id.* at ¶¶ 10, 15] The Complaint defines an M1 hold as a "72-hour mental health evaluation if a person is deemed a danger to herself or others." [*Id.* at ¶ 15] Ms. Wood further noted that Ms. Bickford "is cleared for general population" and that "Crisis [mental health counseling organization] needs to be contacted before [Ms. Bickford] is released to general public."

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint and Jury Demand [#1], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

[*Id.*]  Just over two weeks earlier, on March 20, 2016, Ms. Wood had seen Ms. Bickford at Summit Safe Haven Detox Facility and signed an M1 hold for Ms. Bickford after determining that she was suicidal.  [*Id.*]

On April 7, 2016, at 2:10 a.m., Defendant Deputy Gilbert assisted Ms. Bickford in filling out her intake questionnaire.  [*Id.* at ¶ 16]  Ms. Bickford indicated in the questionnaire that she had previously suffered severe withdrawal symptoms from alcohol.  [*Id.*]  Ms. Bickford also told Deputy Gilbert that she suffered from depression and anxiety and that she was taking prescribed medications for anxiety and depression.  [*Id.* at ¶¶ 16, 17]  When asked if she currently felt suicidal, Ms. Bickford responded by saying "Yes," and Deputy Gilbert added a note that Ms. Bickford "wants to kill herself."  [*Id.* at ¶ 17]  Ms. Bickford was then admitted into the jail.  [*Id.*]

On April 8, 2016, Deputy Hochmuth noted that Mind Springs—a mental health counseling group—asked to be notified if Ms. Bickford was being released.  [*Id.* at ¶ 18]  On Saturday, April 9, 2016, Ms. Bickford reported to a nurse at the Summit County Jail that she was feeling "stress from being in here" and told the nurse she had been prescribed anti-depressants but was not receiving any medication at the jail.  [*Id.*]  The nurse told Ms. Bickford that the jail would make an appointment for her at Summit County Medical Center on Monday, April 11, 2016.  [*Id.*]

On April 10, 2016, Ms. Bickford sent a kite to jail staff asking, "WHEN CAN I SEE A DOCTOR REGARDING PRESCRIPTIONS?"  [*Id.*]  Within an hour, Defendant Staff Sergeant Cheryl Giordano responded to the kite in writing, asking Ms. Bickford, "What scripts?  Are these meds you are currently on?  Is someone able to drop them off?  Who is the prescribing doctor?  Where they out of?  Do you have a phone number?"  [*Id.*]  As

of this time, Ms. Bickford still was not receiving any of her prescribed medications. [*Id.*] The only medication Ms. Bickford received from her admission on April 6, 2016 through April 10, 2016 was Ibuprofen and Pepto Bismol. [*Id.* at ¶ 19] Sergeant Giordano also informed Ms. Bickford on April 10, 2016 that a restraining order had been entered against Ms. Bickford regarding her son. [*Id.* at 20]

On April 10, 2016, at 9:10 p.m., Deputy J. Moore reported seeing Ms. Bickford vomiting, sweating, and shaking—all common symptoms of alcohol withdrawal. [*Id.* at ¶ 21] Ms. Bickford told Deputy Moore that she was not feeling well, and he took her to the booking desk. [*Id.*] Ms. Bickford was crying and stated multiple times that "she didn't want to be [there] and did not want to go back to A pod." [*Id.* at ¶ 22] Ms. Bickford exhibited an elevated blood pressure and a racing pulse—additional symptoms of alcohol withdrawal—but she denied that she wanted to hurt herself. [*Id.*] Ms. Bickford was asked to sit in a holding cell so that deputies could monitor her medical status. [*Id.*]

At 1:15 a.m. on April 11, 2016, Ms. Bickford was escorted back to her cell in the A Pod. [*Id.*] According to Deputy Moore, she was no longer shaking, sweating, or crying at that time. [*Id.*] Later on April 11, 2016, Ms. Bickford hung herself with a bedsheet. [*Id.* at ¶ 23]

B.    **Other Incidents at the Summit County Jail**

In the Complaint, Plaintiff alleges that Summit County "has a shameful history of exhibiting deliberate indifference to the serious needs of inmates." [*Id.* at ¶ 24] In support, Plaintiff offers several recent examples. Plaintiff contends that Summit County recently settled a Section 1983 case involving the death of an inmate at the Summit County Jail named Zackary Moffitt. [*Id.* at ¶ 25] According to the Complaint, Mr. Moffitt was booked

into the jail with a blood alcohol level of almost 0.4 and, over the course of several days, displayed "classic signs of alcohol withdrawal." [*Id.* at ¶ 26] Plaintiff alleges that the jail administrator at the time recognized that Mr. Moffitt needed help and called the doctor who was contracting with the county to provide medical care at the jail. [*Id.* at ¶ 27] When the administrator found out that the doctor was on vacation, however, he allegedly "did nothing whatsoever from that point to obtain emergency treatment for Mr. Moffitt who then died from alcohol withdrawal." [*Id.*]

Plaintiff alleges that Summit County also recently settled another Section 1983 case involving injuries sustained by an inmate named James Durkee. [*Id.* at ¶¶ 31-32] According to the Complaint, although an order had been issued to keep Mr. Durkee separated from an inmate who was threatening his life, staff at the Summit County Jail failed to protect Mr. Durkee and several bones in Mr. Durkee's face ultimately were fractured when he was attacked by the inmate from whom he was supposed to have been separated. [*Id.* at ¶¶ 30-31]

The Complaint further contends that Sergeant Giordano testified at a deposition in the Moffitt case that she quit her job with the Summit County Jail "due to the number of health-related incidents at the jail," including Ms. Bickford's suicide, which she said was the last straw. [*Id.* at ¶ 33] Summit County Deputy Lambert allegedly testified during a deposition in the Moffitt case that an inmate had attempted suicide without her noticing, because she was watching a movie when she was supposed to be monitoring the cell block. [*Id.* at ¶ 34] Although Summit County was going to fire her for the incident, the county instead permitted her to resign and gave her a severance. [*Id.*]

Based upon these incidents and testimony, Plaintiff alleges that the Summit County Sheriff's Department "has a custom, practice and policy of ignoring the serious medical needs/health and safety needs of inmates." [*Id.* at ¶ 35]

### C.    The Instant Lawsuit

On March 21, 2018, Plaintiff Jeffrey W. Hockensmith, as the personal representative of the Estate of Ms. Bickford, filed this lawsuit pursuant to 42 U.S.C. § 1983 asserting two claims for relief. [#1] Plaintiff's First Claim for Relief alleges a violation of Ms. Bickford's right to necessary medical care pursuant to the Due Process Clause of the Fourteenth Amendment against Defendants Captain Erik J. Bourgerie, Sergeant Giordano, Deputy Gilbert, and Ms. Wood in their individual capacities and against Sheriff John Minor in his official capacity.[2] [*Id.* at 8-9] Plaintiff's Second Claim for Relief alleges supervisory liability for failure to train and supervise in violation of the Fourteenth Amendment against Sheriff Minor in his individual and official capacities. [*Id.* at 9-10]

On May 17, 2018, Ms. Wood filed a motion to dismiss Plaintiff's First Claim for Relief against her—the only claim asserted against Ms. Wood. [#14] The Wood Motion argues that Plaintiff's claim against Ms. Wood fails as a matter of law, because the allegations "are insufficient to demonstrate state action on the part of Ms. Wood." [*Id.* at 2] On June 7, 2018, Plaintiff filed a response to the Wood Motion [#18], and Ms. Wood then filed a reply in support of her motion [#22].

---

[2] Although the First Claim for Relief states that it is brought against "[a]ll Defendants in their individual capacities," in Plaintiff's response to the Minor Motion, Plaintiff clarifies that the "first claim against Defendant Minor is a *Monell* claim against the Sheriff in his official capacity." [#38 at 4 n.1] Plaintiff further clarifies that the First Claim for Relief "has not alleged" a claim against Sheriff Minor in his individual capacity. [*Id.*]

On June 4, 2018, Sheriff Minor, Captain Bourgerie, and Deputy Gilbert answered the Complaint. [#17] On July 2, 2018, Sergeant Giordano answered the Complaint. [#29] On July 20, 2018, Plaintiff and Captain Bourgerie filed a Stipulation with the Court agreeing that "all claims asserted by Plaintiff against Defendant Bourgerie be dismissed without prejudice" pursuant to Federal Rule of Civil Procedure 41(a)(1)(A), which allows for the dismissal of a plaintiff's claims without an order of the Court in certain circumstances. [#31] Plaintiff's claims against Caption Bourgerie thus were dismissed and terminated from the lawsuit as of the filing of the Stipulation. [#33]

On July 20, 2018, Sheriff Minor filed a motion for judgment on the pleadings, arguing that all the claims asserted against Sheriff Minor in his individual capacity should be dismissed pursuant to the doctrine of qualified immunity. [#32] On August 24, 2018, Plaintiff filed a response to the Minor Motion [#38], and Sheriff Minor then filed a reply in support of his motion [#44]. On October 23, 2018, Sheriff Minor filed a Notice of Supplemental Authority in further support of the Minor Motion. [#45]

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.   ANALYSIS

### A.   The Wood Motion

Plaintiff's First Claim for Relief, brought pursuant to 42 U.S.C. § 1983, alleges that Ms. Wood, and other defendants, violated Ms. Bickford's Fourteenth Amendment rights

by failing to provide adequate medical care and treatment.[3] [#1 at 8-9] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Ms. Wood does not challenge the sufficiency of Plaintiff's allegations of a constitutional violation, but instead argues only that Plaintiff has not adequately alleged that Ms. Wood was acting under color of state law.[4] [#14] Specifically, Ms. Wood argues that Plaintiff's

---

[3] The Eighth Amendment protects a convicted prisoner's right to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prison officials are required to "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and [] tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). The Fourteenth Amendment's Due Process Clause, on the other hand, applies to pretrial detainees and assures them at least the same standard of care as convicted prisoners. *See Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013) (finding that "detention center officials surely owe pretrial detainees . . . at least the same standard of care prison officials owe convicted inmates"). In the Eighth Amendment context, "'[d]eliberate indifference' involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). There is an open question in the Tenth Circuit as to whether a deliberate indifference claim for pretrial detainees requires subjective deliberate indifference or only objective deliberate indifference. *See Perry v. Durborow*, 892 F.3d 1116, 1122 n.1 (10th Cir. 2018) ("Because [the plaintiff] was a pretrial detainee at the time of the alleged rape, we question whether . . . she had to demonstrate that [the defendant] 'acted with subjective deliberate indifference, as opposed to objective deliberate indifference,' to establish that he violated her constitutional rights." (quoting *Darnell v. Pineiro*, 849 F.3d 17, 38 (2d Cir. 2017)). Because the Wood Motion does not challenge the sufficiency of Plaintiff's deliberate indifference allegations but instead only argues that the allegations regarding state action are insufficient, the Court need not address this open question to resolve the Wood Motion.

[4] For the first time in her reply in support of the Wood Motion, Ms. Wood argues that "[t]he Complaint alleges no affirmative link between Ms. Wood's specific actions and [Ms. Bickford's] alleged denial of medical care" and thus Plaintiff "does not allege that Ms. Wood denied [Ms. Bickford] any medications or medical treatment." [#22 at 3] Because

Section 1983 claim against her fails, because the Complaint includes only "conclusory allegations that [Ms. Wood] acted under color of state law in her capacity as a mental health worker contracted to provide mental health services at the Summit County Jail" and such conclusory allegations "are insufficient to demonstrate state action on the part of Ms. Wood." [*Id.* at 2]

"To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *West*, 487 U.S. at 49 (alterations in original) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "The Supreme Court has acknowledged that the determination as to whether particular conduct constitutes state action 'frequently admits of no easy answer.'" *Gallagher v. "Neil Young Freedom Concert*," 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974)). As a result, the Tenth Circuit "has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." *Id.* Specifically, the Tenth Circuit has identified the following four tests "to determine whether private parties should be deemed state actors when conducting a state action analysis: (1) the public function test, (2) the nexus test, (3) the symbiotic relationship test and (4) the joint action test." *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002). Here, Plaintiff argues only for application of the public function test. [#18 at 4]

---

Ms. Wood failed to raise this argument in the Wood Motion and Plaintiff thus has not had an opportunity to respond to it, the argument is waived. *See White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017) (finding argument waived when raised for first time in reply brief); *Koskinas v. Colvin*, 1:16-cv-01801-CBS, 2017 WL 2908261, at *4 n.3 (D. Colo. July 7, 2017) (refusing to consider arguments raised for the first time in reply brief).

"The 'public function' test asks whether the challenged action is a traditional and exclusive function of the state." *Wittner v. Banner Health*, 720 F.3d 770, 776-77 (10th Cir. 2013). The Tenth Circuit has cautioned that "[t]his test is difficult to satisfy," because "[w]hile many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Gallagher*, 49 F.3d at 1456 (internal citation omitted). Although not expressly framed in terms of the public function test, the Supreme Court in *West* held that a physician who contracted with the state of North Carolina to provide medical services to state prison inmates, "acted under color of state law for purposes of § 1983 when undertaking his duties in treating [the plaintiff's] injury." *West*, 487 U.S. at 54. The Supreme Court emphasized that inmates "must rely on prison authorities to treat [their] medical needs" and thus the State has a constitutional obligation to provide adequate medical care to those whom it has incarcerated. *Id.* at 54-55 (quotation omitted). As a result, the *West* court found that the doctor who contracted to provide medical care in the prison was "clothed with the authority of state law" and was "a person who may fairly be said to be a state actor." *Id.* at 55 (quotations omitted). Numerous courts have relied upon *West* to find that the provision of medical care to prison inmates and pretrial detainees satisfies the public function test and thus constitutes state action, even when the medical care is provided by private actors. *See, e.g.*, *Carl v. Muskegon Cty.*, 763 F.3d 592, 597 (6th Cir. 2014) ("Providing medical care to prison inmates and pretrial detainees is indeed a power that has traditionally been reserved to the state."); *Finlinson v. Millard Cty.*, No. 2:16-CV-01009-TC, 2018 WL 5438436, at *33 (D. Utah Oct. 29, 2018) (finding that mental health provider, through its contract with the county, assumed the jail's duties to provide mental health care to the inmates and thus

was a state actor); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (finding "state action [ ] clearly present" where private health services provider contracted to provide health care services for jail).

Without any acknowledgement of this line of cases, the Wood Motion contends that "[p]roviding mental health services is not [] a power that is traditionally and exclusively reserved to the state." [#14 at 5] The two out-of-Circuit cases Ms. Wood cites in support of this proposition, however, are inapposite because neither involves the provision of mental health services to prison inmates or pretrial detainees.[5] *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (finding that private non-profit that contracted to provide community mental health services for the county was not a state actor, because "providing mental health services has not been a power which has traditionally been exclusively reserved to the state"); *Gabbard v. First Tenn. Bank*, No. 3:05-CV-114, 2007 WL 2263082, at *3 (E.D. Tenn. Aug. 2, 2007) (holding that involuntary commitment by private physicians pursuant to a state statute does not result in state action). As the Sixth Circuit explained in *Carl*, "context matters. Because *Wolotsky* did not arise in a custodial setting, it does not apply where, as here, the state has absolute dominion over a

---

[5] In her Reply, Ms. Wood quotes a decision from Judge R. Brooke Jackson of this District for the proposition that "[t]he existence of a contract between the state and a private party is insufficient to demonstrate that the private entity is a state actor" and "[a] private entity which has a service contract with the state can be a state actor but only if the private entity or party performs the contract with the co-objective of violating the individual's rights." [#22 at 4 (quoting *Edmond v. Clements*, 896 F. Supp. 2d 960, 965 (D. Colo. 2012), *aff'd sub nom.*, 593 F. App'x 761 (10th Cir. 2014))] *Edmond* also is inapposite however, because it does not involve the provision of mental health services to pretrial detainees or incarcerated prisoners. Moreover, the plaintiff in *Edmond* "d[id] not allege that the [private entity] defendants qualif[ied] as state actors under any of the [four] tests" articulated by the Tenth Circuit but instead alleged only that his parole officer had referred him to the private entity's treatment program. *Edmond*, 896 F. Supp. 2d at 965.

detainee's care. Providing medical care to prison inmates and pretrial detainees is indeed a power that has traditionally been reserved to the state." 763 F.3d at 597.

Seemingly acknowledging this, Ms. Wood changes course in her reply and, instead of arguing that the provision of mental health services at the jail was not a public function, argues that "Plaintiff's Complaint is completely devoid of any factual allegation that Ms. Wood actually provided medical care to [Ms. Bickford]." [#22 at 2] Instead, Ms. Wood argues that Plaintiff has only alleged that Ms. Wood "wrote on a form and cleared Ms. Bickford for general population" and that such actions were "procedural in nature as to the facility's process of identifying an inmate's cell." [*Id.* at 3] The Court disagrees. The Complaint alleges that Ms. Wood, aware that Ms. Bickford had threatened to kill herself if her child was taken away, "wrote on a mental health form 'CI does not meet criteria for an M1 hold [72-hour mental health evaluation if a person is deemed a danger to herself or others] currently,'" cleared Ms. Bickford for general population, and further noted that a mental health counseling organization "needs to be contacted before [Ms. Bickford] is released to general public." [#1 at ¶ 15] Based upon these allegations, Plaintiff alleges that Ms. Wood (and other defendants) "failed to examine, treat, and care for Ms. Bickford's worsening condition and failed to send her for treatment." [*Id.* at ¶ 41] Given Ms. Wood's role as the mental health provider completing this intake form, and particularly given Ms. Wood's notation that Ms. Bickford did not meet the criteria for a 72-hour mental health evaluation, it is plausible to infer that Ms. Wood was in a position to evaluate Ms. Bickford's mental health at the time of intake and refer her for treatment. It is this failure to provide mental health treatment, such as an M1 hold, that forms the basis of Plaintiff's deliberate indifference allegations—the sufficiency of which Ms. Wood does not

challenge. Ms. Wood's arguments in the reply thus "speak more directly to whether [Ms. Wood] disregarded a risk to [Ms. Bickford's] claimed medical needs (*i.e.*, to the merits of [Plaintiff's] . . . Fourteenth Amendment claim[ ]); they are of modest value in assessing her status as a state actor." *Carl*, 763 F.3d at 597.

The Court thus finds that Plaintiff has adequately pleaded that Ms. Wood, by contracting with the Summit County Jail to provide the mental health services that Summit County was constitutionally required to provide to Ms. Bickford and other pretrial detainees, was "clothed with the authority of state law" and was "a person who may fairly be said to be a state actor." *See West*, 487 U.S. at 55. Accordingly, the Wood Motion is **DENIED**.

### B.     The Minor Motion

Plaintiff's Second Claim for Relief alleges supervisory liability for failure to train and supervise in violation of the Fourteenth Amendment against Sheriff Minor in his individual and official capacities. [#1 at 9-10] The Minor Motion seeks dismissal of the Second Claim for Relief asserted against Sheriff Minor in his individual capacity on the basis of qualified immunity.[6] [#32 at 3, 6-14]

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v.*

---

[6] The Minor Motion also moved to dismiss Plaintiff's First Claim for Relief against Sheriff Minor in his individual capacity. [#32 at 4-6] In her response to the Minor Motion, Plaintiff clarifies that the "first claim against Defendant Minor is a *Monell* claim against the Sheriff in his official capacity." [#38 at 4 n.1] Plaintiff further clarifies that the First Claim for Relief "has not alleged" a claim against Sheriff Minor in his individual capacity. [*Id.*] To the extent Plaintiff's First Claim for Relief may be read to assert a claim against Sheriff Minor in his individual capacity (see *supra* note 2), that claim is **DISMISSED**.

*Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Sheriff Minor argues that Plaintiff is unable to satisfy either prong of the qualified immunity analysis. [#32 at 6-14]

Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. In *Pearson*, the Supreme Court recognized that "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify" and thus that the determination of the first prong of the qualified immunity analysis may be "an uncomfortable exercise," because "the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed." *Id.* at 238-39 (internal quotation omitted). The Supreme Court further acknowledged that, in certain cases, "a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Id.* at 239. Because the Court finds these principles applicable here, the Court first addresses the second prong of the qualified immunity analysis—*i.e.*, whether Plaintiff has identified a clearly established right allegedly violated by Sheriff Minor.

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v.*

*Wesby*, 138 S. Ct. 577, 589 (2018). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Id.* at 591 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (internal quotation omitted). The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established . . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted).

Here, Plaintiff alleges that Sheriff Minor violated Ms. Bickford's Fourteenth Amendment rights by failing to properly train and supervise jail personnel. [#1 at 9-10] Specifically, Plaintiff alleges that "Defendant Minor ha[d] a duty to train and supervise duty sheriffs, staff sergeants, captains, and other jail personnel to recognize the symptoms of alcohol withdrawal and initiate an appropriate medical intervention for a detainee

exhibiting those symptoms" but "failed to discharge [that] duty." [*Id.* at ¶¶ 49-50] As a result of this alleged failure, Plaintiff alleges that Ms. Bickford "suffered extreme mental and physical pain during the approximately five days, leading up to her death." [*Id.* at ¶ 53]

As currently pled, Plaintiff's Second Claim for Relief thus relates only to Sheriff Minor's alleged duty to train and supervise jail personnel with respect to recognizing and initiating medical intervention for alcohol withdrawal. [#1 at 9-10] In his response to the Minor Motion, Plaintiff attempts to define the scope of the Second Claim for Relief more broadly, arguing that Sheriff Minor "violated clearly established law by failing to supervise and train his jail staff to prevent his staff's repeated deliberate indifference to inmates' serious medical needs and substantial risks of harm." [#38 at 4; *see also id.* at 9 (arguing that it is clearly established that "a defendant violates a detainee's constitutional rights by failing to supervise and train subordinates to remedy repeated instances of deliberate indifference and prevent future deliberate indifference to a detainee's serious medical needs and substantial risk of self-harm")] Elsewhere in his response, Plaintiff appears to recast the nature of the claim as one related to a failure to supervise and train employees with regard to detainees who pose a substantial risk of suicide rather than a failure of supervision and training with regard to recognizing and initiating medical intervention for alcohol withdrawal as alleged in the Complaint. [*See id.* at 11-13] Plaintiff's attempts to redefine the scope and nature of the Second Claim for Relief in his briefing on the Minor Motion are improper. "It is well-established [] that in determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d

488, 494 (10th Cir. 1995); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")

As a result of Plaintiff's inappropriate attempt to redefine the scope and nature of the Second Claim for Relief in his response, Plaintiff fails even to attempt to identify caselaw establishing a clearly established right for Sheriff Minor "to train and supervise . . . jail personnel to recognize the symptoms of alcohol withdrawal and initiate an appropriate medical intervention for a detainee exhibiting those symptoms." [#1 at ¶ 49] Instead, Plaintiff focuses his efforts on arguing that the law was clearly established that "a supervisor can be liable for failing to supervise and train officers to ensure that" jail personnel who have knowledge of a detainee's substantial risk of suicide, "take reasonable steps to protect the detainee." [#38 at 13] "On this basis alone, [the Court] could hold that [Plaintiff] has not properly laid the groundwork to defeat Sheriff [Minor's] assertion of qualified immunity."[7] *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015).

Even if the Court were to consider Plaintiff's claim against Sheriff Minor as recast in Plaintiff's response to the Minor Motion, Plaintiff still has failed to allege the violation of a clearly established right. Plaintiff relies upon three Tenth Circuit decisions to support his argument that it was clearly established at the time of Ms. Bickford's death in April 2016 that a sheriff must supervise and train jail personnel to ensure that they take

---

[7] Although it is Plaintiff's burden to show that the right at issue was clearly established at the time of the alleged violation, the Court's own research also failed to identify any Supreme Court or Tenth Circuit precedent defining a clearly established right to have Sheriff Minor "train and supervise . . . jail personnel to recognize the symptoms of alcohol withdrawal and initiate an appropriate medical intervention for a detainee exhibiting those symptoms" under the circumstances alleged here.

reasonable steps to protect a detainee who the jail personnel know to present a substantial risk of suicide.[8] [#38 at 9-13] None identifies a clearly established right in the context of a claim for supervisor liability.

In *Estate of Hocker ex rel. Hocker v. Walsh*, the Tenth Circuit upheld the district court's grant of summary judgment to the defendants on a claim asserted by the estate of a deceased detainee that jail staff was deliberately indifferent to the risk that the detainee would commit suicide by not providing her with medical treatment. 22 F.3d 995, 1000 (10th Cir. 1994). The Tenth Circuit found that summary judgment was appropriate because "no facts suggest[ed] that the [jail] staff had knowledge of the specific risk that [the detainee] would commit suicide," the facts did not suggest that the deceased's "risk of suicide was so substantial or pervasive that knowledge [could] be inferred," and the detainee's known "intoxication with its accompanying incoherence [did] not, by itself, give the [jail] staff knowledge that [the detainee] posed a specific risk of suicide." *Id.* Similarly, in *Barrie v. Grand Cty.*, the Tenth Circuit found that defendants were entitled to summary judgment on a deliberate indifference claim, because "[t]he defendants' conduct, viewed individually or collectively, simply [did] not rise to the level of 'deliberate indifference' to a

---

[8] Plaintiff also cites to the Supreme Court's decision in *Estelle v. Gamble*, 429 U.S. 97 (1976) and quotes from the Tenth Circuit's decision in *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005) for the proposition that "[t]here is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right." [#38 at 10] As the Tenth Circuit has explained, however, this general principle "is patently unavailing" in determining whether the nature of the *particular conduct* is clearly established "given the Supreme Court's 'repeated[ ]' admonition 'not to define clearly established law at a high level of generality.'" *Cox*, 800 F.3d at 1245 n.6 (quoting *al–Kidd*, 563 U.S. at 742). *Estelle*, which discusses medical care provided in response to an inmate's back pain, and *Mata*, which discusses medical care provided in response to an inmate's chest pains and subsequent heart attack, obviously do not clearly establish any right with respect to the treatment—let alone training and supervision—of a detainee's alcohol withdrawal or self-harm.

known or obvious risk, which, in our case, is a substantial risk of suicide." 119 F.3d 862, 869 (10th Cir. 1997).

Although the Tenth Circuit failed to find deliberate indifference in either case, Plaintiff argues that "[t]he obvious import of *Hocker* and *Barrie* is that where a jail does have knowledge of a detainee's substantial risk of suicide, jail staff must take reasonable steps to protect the detainee from self-harm." [#38 at 11] Even if *Hocker* and *Barrie* may be read to clearly establish that *jail staff* must take reasonable steps to protect a detainee from a known risk of self-harm, neither case addresses supervisor liability for a failure to supervise or train jail staff regarding known risks of self-harm—the violation alleged here. *Hocker* and *Barrie* thus "say[ ] nothing about what kind of 'supervisory conduct' might suffice to violate the Eighth or Fourteenth Amendments." *Perry v. Durborow*, 892 F.3d 1116, 1125 (10th Cir. 2018). The Tenth Circuit has made clear that, in the context of supervisory liability claims, "before the district court [can] determine the law was clearly established, it [must] 'identify a case where an offic[ial] acting under similar circumstances as [the defendant supervisor] was held to have violated' the Eighth or Fourteenth Amendments under a theory of supervisory liability." *Id.* at 1124 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)).

The Tenth Circuit has expressly held that *Cox*, the final decision relied upon by Plaintiff, "is not such a case," because, in *Cox*, the court "assumed the existence of a constitutional violation and held that the right at issue—'an inmate's right to proper prison suicide screening procedures during booking'—wasn't clearly established." *Id.* (quoting *Cox*, 800 F.3d at 1247). In *Cox*, the plaintiff asserted a deliberate indifference claim against the sheriff defendant in his individual capacity under a supervisory liability theory

following the suicide of a detainee at the jail overseen by the sheriff. *Cox*, 800 F.3d at 1236. The Tenth Circuit held that the sheriff defendant was entitled to qualified immunity on the supervisory liability claim, because the court "[could not] conclude that [the sheriff's] conduct constituted an Eighth Amendment violation under the law that was clearly established at the time of [the detainee's] death." *Id.* at 1254. In its analysis, the Tenth Circuit noted that "irrespective of the alleged deficiencies in the Jail's suicide-screening protocols, in order for any defendant, including [the sheriff], to be found to have acted with deliberate indifference, he needed to first have knowledge that the specific inmate at issue presented a substantial risk of suicide." *Id.* at 1250. Because the sheriff defendant had no personal interaction with the deceased detainee or contemporaneous knowledge of his treatment, the Tenth Circuit noted that "insofar as [the sheriff] had knowledge sufficient to form the requisite mental state, it would have had to necessarily come from his subordinates." *Id.* at 1252. The Tenth Circuit then conducted a review of the record evidence and concluded that "the record (even viewed in the light most favorable to [the plaintiff]) [did] not establish that *any* identified Jail employee . . . had knowledge that [the detainee] presented a substantial risk of suicide." *Id.* (emphasis in original).

Based upon this analysis, Plaintiff argues that "[t]he Tenth Circuit made clear that a supervisor could have the requisite mental state to be liable for deliberate indifference based on knowledge 'com[ing] from his subordinates.'" [#38 at 11 (quoting *Cox*, 800 F.3d at 1252)] Plaintiff then seeks to distinguish the result in *Cox* from the instant case by arguing that, here, Plaintiff has alleged that Sheriff Minor's subordinates had knowledge that Ms. Bickford presented a substantial risk of suicide. [*Id.* at 11-13] Although the Court

agrees that the *Cox* decision could be read to imply that a supervisor may be found to have the requisite mental state for deliberate indifference based upon knowledge coming from the supervisor's subordinates, such an implication is not sufficient to satisfy the clearly established prong of the qualified immunity analysis. *See Wesby*, 138 S. Ct. at 589 (holding that "existing law must have placed the constitutionality of the officer's conduct 'beyond debate'" (quoting *al-Kidd*, 563 U.S. at 741)). Moreover, this Court is bound by the Tenth Circuit's instruction in *Perry* that *Cox* cannot be relied upon to define a clearly established right under a theory of supervisory liability, because the Court in *Cox* "assumed the existence of a constitutional violation." *Perry*, 892 F.3d at 1124.

The Supreme Court's decision in *Taylor v. Barkes* provides further support for the Court's application of qualified immunity here. 135 S. Ct. 2042 (2015) (*per curiam*). In *Taylor*, the family of a pretrial detainee who committed suicide at a facility in Delaware asserted a claim against the commissioner of the Delaware Department of Corrections and the warden of the facility for "failing to supervise and monitor the private contractor that provided the medical treatment—including the intake screening—at the [facility]." *Id.* at 2043. The Supreme Court held that the defendants were entitled to qualified immunity because "an incarcerated person's right to the proper implementation of adequate suicide prevention protocols . . . was not clearly established [at the time of the detainee's suicide] in a way that placed beyond debate the unconstitutionality of the [facility's] procedures, as implemented by the medical contractor." *Id.* at 2044. Although Plaintiff argues that *Taylor* is inapplicable because Plaintiff "has not alleged deficiencies in Summit County's suicide screening protocol" [#38 at 12 n.4], the Court finds the Supreme Court's reasoning in *Taylor* instructive here. The Supreme Court held that the Third Circuit's prior decisions

establishing that prison officials who know or should know of an inmate's particular vulnerability to suicide must not act with reckless indifference to that vulnerability were insufficient to clearly establish a right to the proper implementation of adequate suicide prevention protocols. *Taylor*, 135 S. Ct. at 2045. The Supreme Court emphasized that the prior precedent "did not say, however, that detention facilities must implement procedures to identify such vulnerable inmates, let alone specify what procedures would suffice" and "did not identify any minimum screening procedures or prevention protocols that facilities must use." *Id.* Similarly, Plaintiff here fails to identify any precedent establishing that supervision and training related to an inmate's alcohol withdrawal and/or risk of self-harm is required, let alone precedent that specifies what training or supervisory regimen would suffice.

Accordingly, the Court "cannot conclude that Sheriff [Minor]'s conduct constituted a[ ] [Fourteenth] Amendment violation under the law that was clearly established at the time of [Ms. Bickford's] death." *Cox*, 800 F.3d at 1254. Sheriff Minor thus is entitled to qualified immunity and the Minor Motion is **GRANTED**.

### C. Deputies John and Jane Does 1-10

The Court *sua sponte* addresses Plaintiff's remaining claims against Deputies John and Jane Does 1-10 (the "Doe Defendants"). In the Complaint, Plaintiff's only allegation specific to the Doe Defendants states: "At all times, Defendants John and Jane Does were citizens of the United States and residents of Colorado. At all relevant times, Defendants were acting under color of state law in their capacities as deputies employed by the Summit County Sheriff's Office." [#1 at ¶ 11]

Plaintiff has not filed a proof of service with the Court with respect to any of the Doe Defendants, as required by Federal Rule of Civil Procedure 4(l), nor have any of the Doe Defendants entered an appearance. Pursuant to Federal Rule of Civil Procedure 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The Scheduling Order in this case set October 11, 2018, as the deadline for the joinder of parties and the amendment of pleadings. [#42 at 14] To date, Plaintiff has neither sought to amend its complaint to identify the Doe Defendants nor sought an extension of the deadline to do so.

Given Plaintiff's failure to comply with Rule 4(m) and the deadline to amend pleadings, Plaintiff appears to have abandoned his claims against the Doe Defendants. Accordingly, within 21 days of this Order, Plaintiff shall show good cause for the failure to identify and serve the Doe Defendants. Failure to do so will result in dismissal of the Doe Defendants.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that**:**

(1)     The Wood Motion [#14] is **DENIED**;

(2)     The Minor Motion [#32] is **GRANTED**;

(3)     All of Plaintiff's claims asserted against Defendant John Minor in his individual capacity are **DISMISSED**; and

(4)     Within 21 days of this Order, Plaintiff shall show good cause for why the claims against the Doe Defendants should not be dismissed.

DATED:  December 11, 2018                    BY THE COURT:

s/Scott T. Varholak_____
United States Magistrate Judge